UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Securities and Exchange Commission,

                Plaintiff,

      v.

John W. Lawton; Paramount Partners, LP;
Crossroad Capital Management, LLC,

                Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 09-368 ADM/AJB

Adolph J. Dean, Jr., Esq., Eric M. Phillips, Esq., James A. Davidson, Esq., John E. Birkenheier, Esq., Marlene B. Key, Esq., U.S. Securities & Exchange Commission, Chicago, IL and Lonnie F. Bryan, Esq., United States Attorney's Office, Minneapolis, MN on behalf of Plaintiff.

John R. Neve, Esq. and Evan Weiner, Esq., Neve Law, PLLC, Minneapolis, MN on behalf of Defendant John W. Lawton.

No one appeared on behalf of Defendants Paramount Partners, LP and Crossroad Capital Management, LLC.

## I. INTRODUCTION

On January 4, 2011, the undersigned United States District Judge heard oral argument on Plaintiff Securities and Exchange Commission's (the "Commission") Motion to Determine Disgorgement and Other Monetary Relief [Docket No. 53]. Defendant John W. Lawton ("Lawton") opposes the Motion. Also before the Court for consideration is Lawton's Motion to Vacate Permanent Injunction [Docket No. 44]. For the reasons set forth below, Lawton's Motion is denied and the Commission's Motion is granted in part and denied in part.[1]

---

[1] Since oral argument, further motions have been filed. Those motions will also be considered in this Order.

## II.  BACKGROUND

In 2001, Lawton began managing, through an investment advisory firm Defendant Crossroad Capital Management, LLC ("Crossroad"), a hedge fund.  Compl. [Docket No. 1] ¶¶ 1, 14.  The fund would later become known as Defendant Paramount Partners, LP ("Paramount").  Id. ¶¶ 14-15.  Lawton advertised Paramount as a "boutique for wealthy investors."  Id. ¶ 25.  Lawton's and Crossroad's compensation was tied to Paramount's performance; their annual compensation was measured as 1% of Paramount's net asset value and 25% of any positive total return earned by Paramount.  Id. ¶ 17.  In early 2009, the Commission learned that Lawton had been overstating Paramount's performance.  See id. ¶ 2.  The present action and a related criminal action,[2] assigned to U.S. Senior District Judge Paul A. Magnuson, ensued.

On February 18, 2009, the Commission filed the instant civil action against Lawton, Paramount, and Crossroad alleging securities law violations.  See generally id.  On February 19, 2009, a Temporary Restraining Order [Docket No. 13] issued.  On February 25, 2009, with Lawton's consent, an Order of Preliminary Injunction and Other Relief [Docket No. 21] was entered.  On July 13, 2009, again with Lawton's consent, an Order of Permanent Injunction [Docket No. 34] issued.  That Order provided that the Court would determine amounts for disgorgement and civil penalty upon motion of the Commission, and that such motion could be opposed by the Defendants.

In the criminal case, the Felony Information was filed on October 30, 2009.  On November 24, 2009, Lawton pled guilty to the criminal charges.  At Lawton's plea colloquy, he

---

[2] United States v. John W. Lawton, Crim. No. 09-319.  References to the docket in that matter will be noted as "Crim. Docket. No."

admitted to making false statements concerning the financial health of Paramount beginning in January 2006. Tr. Change of Plea Hr'g [Crim. Docket No. 18] at 16. On October 6, 2010, Judge Magnuson sentenced Lawton to seventy months' imprisonment, followed by three years of supervised release, and ordered him to pay a $200 special assessment while deferring the issue of restitution. On October 20, 2010, Judge Magnuson ordered Lawton to pay $7,091,230.75 in restitution to victims of his criminal conduct.

In June 2010, after Lawton had already consented to the permanent injunction, he hired a forensic accountant to conduct a valuation of Paramount's assets. Neve Decl. [Docket No. 47] Ex. A, Ex. 1 at 1. The forensic accountant did not have access to some evidence in the possession of the Commission, and therefore expressly stated in his report that he relied on Lawton's own representations. Id. at 3. Further, this accounting valued Paramount's assets only from 2008 onward. Id. at 1. The accountant concluded that Lawton had not overstated the value of Paramount's assets and that Lawton's representations to investors concerning the value of their accounts were "generally similar" to the actual account values. Id. at 4-5. Lawton relies heavily upon that report in his Motion to Vacate. The Commission has not responded to that Motion, but did file its Motion to Determine Disgorgement. Lawton opposes the Commission's motion based on his accountant's report and further argues that even if he did overstate the value of assets, he made no profit because his funds were frozen soon after the alleged overstatements.

### III. DISCUSSION

A.  **Motion to Vacate**

Rule 60(b) of the Federal Rules of Civil Procedure allows courts to vacate a final judgment or order. Fed. R. Civ. P. 60(b). Grounds for vacating an order are broad and include

3

"excusable neglect," newly discovered evidence, and "any other reason that justifies relief." Id. Rule 60(b), however, "provides for extraordinary relief" and is appropriate only in "exceptional circumstances." Atkinson v. Prudential Prop. Co., 43 F.3d 367, 371 (8th Cir. 1994) (quotations omitted). The Court has "wide discretion" in deciding whether or not to grant a Rule 60(b) motion. Id. Here, Lawton has not demonstrated any grounds that entitle him to relief from the Court's Order for Permanent Injunction.

### 1. The Order was not entered as result of excusable neglect

Lawton's entire argument rests on the forensic accounting he commissioned. First, he argues that it was excusable neglect to consent to the entry of the Order before seeking to vacate it based on the commissioned accounting. Consent is not excusable neglect. If Lawton did not wish to be subject to the Order, he should not have consented to it. Lawton's after the fact regret of his decision to consent after learning the results of the accounting he commissioned do not make it excusable neglect to have consented in the first place. He entered his consent knowingly and voluntarily and with the advice of counsel. Consent of Defs. John W. Lawton, Paramount Partners, LP and Crossroad Capital Mgmt., LLC [Docket No. 33] ¶ 5. Further, Lawton is a sophisticated individual, who managed a multi-million dollar hedge fund, and who retained the counsel of his choice for representation in this matter. There is no evidence that Lawton did not fully understand the proceedings and the effect of consenting to the permanent injunction. Having "buyer's remorse" after learning the results of the forensic accounting does not constitute excusable neglect.

### 2. No newly discovered evidence warrants vacating Order

Second, Lawton argues that the forensic accounting is newly discovered evidence.

Newly discovered evidence for the purposes of Rule 60 does not mean any evidence recently uncovered or, as in this case, created. Rather, for relief under Rule 60, the newly discovered evidence must be of a nature such that it would probably change the result if a new proceedings were granted. See Atkinson, 43 F.3d at 371. The newly discovered evidence must also be of a nature such that Lawton exercised due diligence to discover the evidence before the Order. See id.

Here, the forensic accounting does not warrant vacating the Order. First, due diligence was not exercised. Lawton commissioned the accounting after entering his consent to the Order. He could have withheld his consent until after the accounting. His assets being frozen is immaterial. He had resources to commission the accounting by June 2010; no one required him to consent to the Order prior to commissioning the accounting. Further, the accounting would not change the result were a new proceedings granted. The accounting lacks probative value because it relied heavily on information provided by Lawton, and relates to only a portion of the time period that Lawton overstated the value of Paramount's assets. For these reasons, no reasonable fact-finder would give significant credence to the accounting and it does not warrant vacating the permanent injunction.

### 3. No other grounds exist to justify vacating Order

Finally, Lawton argues that relief from the Order is justified under Rule 60's catch-all provision because he consented to the Order based on considerations in his criminal case that have since changed. Specifically, Lawton argues that when he consented, he planned to exercise his Fifth Amendment rights in his criminal matter but later decided to plead guilty. However, it is not unjust to hold Lawton to his consent, provided knowingly and voluntarily and with the

advice of counsel, merely because his criminal case did not resolve as he had hoped.

In summary, Lawton has not shown a reason that would entitle him to relief from the permanent injunction that was previously entered with his consent. As such, his motion is denied and the Court's Order will stand. The Court now turns to the Commission's Motion regarding disgorgement.

**B.     Motion to Set Disgorgement, Prejudgment Interest, Civil Penalties**

   **1.     Disgorgement**

Courts may order disgorgement of ill-gotten profits once a violation of securities law has been found. See S.E.C. v. Ridenour, 913 F.2d 515, 517 (8th Cir. 1990) ("An individual found liable for fraudulently trading federal securities may properly be ordered to disgorge any ill-gotten profits."). Disgorgement is an equitable remedy. See S.E.C. v. Palmisano, 135 F.3d 860, 865 (2d Cir. 1998) (noting that disgorgement has long been upheld as within the general equity powers granted to district courts). Disgorgement is a remedial measure, aimed at preventing unjust enrichment as the result of a defendant's wrongdoing. S.E.C. v. O'Hagan, 901 F. Supp. 1461, 1468 (D. Minn. 1995). Disgorgement therefore must be tied to the amount of gains derived from unlawful, as opposed to lawful, conduct. S.E.C. v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989). However, disgorgement need not be exact; courts need only find that the disgorged amount is a reasonable approximation of the gains received as a result of a securities law violation. See S.E.C. v. Brown, 579 F. Supp. 2d 1228, 1245 (D. Minn. 2008) (holding that disgorgement figure was appropriate because it was a reasonable approximation of misappropriated investor funds). The Commission bears the burden of establishing that its disgorgement calculation is such a reasonable approximation. S.E.C. v. Colonial Inv. Mgmt.

LLC, 659 F. Supp. 2d 467, 501 (S.D.N.Y. 2009).

### a. Relevant time-frame

For the purposes of the present motion, Lawton agreed that the allegations in the Complaint be deemed true. As Lawton argues, however, the Complaint is somewhat ambiguous regarding when securities violations began taking place. The Complaint alleges that Lawton made representations concerning the success of Paramount beginning in 2001. Compl. ¶¶ 2, 26. The Complaint also alleges that some of these representations were false and made in violation of federal securities law. Compl. ¶¶ 44-47, 49-51, 53-55, 58-60, 63-65, 68-69, 72-74. The Complaint, however, does not state the precise date the violations began. Rather, the Complaint avers that the violations continued "as late as January 2009" and provides the most recent examples of overstatement. See, e.g., Compl. ¶¶ 28, 37.

Lawton attempts to use this ambiguity to argue that he could not have profited from securities law violations because his accounts were frozen shortly after the false statements alleged to have occurred in January 2009 and December 2008. Any arguments regarding the vagueness of the Complaint, however, are largely academic. Lawton himself has admitted to violating securities law beginning in 2006. Change of Plea Hr'g [Crim. Docket No. 18] at 16. While the Complaint could be read to allege securities violations dating back even further to 2001, in light of the ambiguity, the Court finds that a fair reading of the Complaint is that a reasonable approximation of Lawton's ill-gotten gains should value disgorgement from January 2006 to the time of the freeze.

### b. Reasonable approximation of ill-gotten gains

A reasonable approximation of the amount of ill-gotten gains received by Lawton is

$1,758,788. This represents the amount transferred from Paramount and Crossroad's bank accounts to Lawton less transfers Lawton made back to Paramount between January 2006 and the asset freeze in February 2009. Lawton argues that all of this money was obtained from legitimate trading. The record is clear, however, that Lawton was entitled to annual compensation only in the amounts of 1% of Paramount's net asset value and 25% of any positive total return earned by Paramount. Compl. ¶ 17. Lawton misstated the profitability of Paramount. Had investors known the true financial situation of Paramount they likely would have withdrawn or not invested much of the money that funded Paramount and was withdrawn by Lawton. Because the scenario where Paramount's assets were accurately stated is hypothetical, it is impossible to quantify precisely what money would have been left for legitimate trades by Lawton had investors been provided accurate information about Paramount's financial situation. Nonetheless, a reasonable conclusion is that Lawton should not, and would not, have been compensated for running a failing hedge fund, especially where many of the investors' funds were invested or remained invested only due to false statements. Therefore, a reasonable approximation of the total amount to be presently disgorged by Lawton is $1,758,788.

The Commission urges the Court to also consider the value of Paramount's loan receivable amount in determining disgorgement for both Lawton and Crossroad. However, the Commission does not state how or when the increased value of the loan receivable was realized by Lawton or Crossroad. The Commission does not articulate whether Lawton withdrew that money or otherwise used it to his or Crossroad's advantage. As such, the Court cannot say that Lawton or Crossroad have profited from the increased value of that asset and that amount is not

included in the disgorgement calculation.

The Commission also has requested disgorgement by Crossroad. Crossroad has not made an appearance or opposed the Commission's Motion. For the same reasons discussed above for Lawton, the amounts received by Crossroad from Paramount are a reasonable approximation of its ill-gotten gains. Further, for the same reasons discussed above with respect to Lawton, the increased value of the loan receivable will not be disgorged. Thus, the total amount to be presently disgorged by Crossroad is $2,075,670.

### 2. Prejudgment Interest

Courts ordering disgorgement may also order prejudgment interest on the disgorged amount. See, e.g., O'Hagan, 901 F. Supp. at 1473 (awarding prejudgment interest on disgorgement figure). Prejudgment interest, like disgorgement, prevents a defendant from profiting from his securities violations. Id. In essence, ordering payment of prejudgment interest prevents a defendant from obtaining the benefit of an interest-free loan due to his unlawful conduct. S.E.C. v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).

Lawton directs no arguments to the issue of prejudgment interest, presumably because his position is that the appropriate disgorgement amount is zero. The disgorgement amount for both Lawton and Crossroad, however, is not zero, as discussed above, and prejudgment interest is appropriate to prevent the Defendants from benefitting from their unlawful activity. Therefore, Lawton and Crossroad will pay prejudgment interest, calculated from February 2009 to the date of this Order using the Internal Revenue Service delinquent tax rate for unpaid taxes, on their respective disgorgement obligations as set forth in this Order. See S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996) (noting use of IRS rate in calculating prejudgment

interest on disgorgement).

### 3. Civil Penalty

For securities law violations involving fraud or deceit, such as those here, courts may impose "third tier" civil penalties. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b-9(e)(2)(C). While disgorgement is used to prevent defendants from profiting from unlawful activity, third tier civil penalties are aimed at punishing unlawful conduct and deterring future securities violations. S.E.C. v. Brown, 643 F. Supp. 2d 1088, 1092 (D. Minn. 2009). The amount of third tier civil penalties that may be court ordered is generally limited to $100,000 for natural persons and $500,000 for other entities. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b-9(e)(2)(C). Courts have discretion to impose higher penalties in the amount of pecuniary gain the defendant realized as a result of the violation. See Brown, 643 F. Supp. 2d at 1088 (noting "discretionary nature" of civil penalties); see also 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b-9(e)(2)(C) (limiting amount of third tier penalties to pecuniary gain of defendant). Here, in light of the significant financial obligations already ordered, the Court declines to exercise its discretion to impose higher penalties and instead imposes the maximum statutory penalty on Lawton and Crossroad. Therefore, Lawton is assessed a $100,000 penalty and Crossroad a $500,000 penalty.

### C. Other Motions

By letter dated January 31, 2011 [Docket No. 73], Lawton notified the Court of his desire to terminate his counsel of record and proceed pro se. The same day his attorneys, John Neve and Evan Weiner, filed a Motion to Withdraw [Docket No. 72]. Given that this litigation is concluding and given Lawton's request, Lawton will not be prejudiced by withdrawal of counsel and the Court grants that motion.

After sending notice terminating his representation by counsel, Lawton has made near daily pro se filings. On February 4, 2011, Lawton filed a Motion to Stay/Set Aside Interim Order Issued January 18, 2011 [Docket No. 76]. The thrust of Lawton's argument related to that motion is that his attorneys entered his consent without discussing it with him, that they did not oppose the Court's Interim Order, and that Lawton will soon seek to amend the Answer and start relitigating this case from the beginning. None of these arguments carries any merit.

First, Lawton's consent to the previous Orders was not entered by anyone except him. Both consent notices bear his signature, which appears multiple times as he signed on behalf of all Defendants. Second, Lawton fundamentally misunderstands the opportunity of his counsel to oppose the Interim Order. The Court gave him the opportunity to respond to new numbers provided by the Commission regarding *this* Order. The Court did not order a response, but merely provided an opportunity to do so. Given that Lawton's position is that the disgorgement amount should be zero, it is understandable that no response was given to the adjusted figures. Further, Lawton's argument that the Court should somehow consider Judge Magnuson's decision to grant Lawton's Motion to Reconsider related to withdrawal of his guilty plea in his criminal case is unpersuasive. In light of his disgorgement obligations in this civil case, no reason exists to stay the lift of the asset freeze. Lawton's assets must remain unfrozen for the purpose of satisfying this judgment. Finally, Lawton, with the aid of counsel, chose to consent to several Orders and this case is now at the phase of final judgment.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Lawton's Motion to Vacate Permanent Injunction [Docket No. 44] is **DENIED**;

2. The Commission's Motion to Determine Disgorgement and Other Monetary Relief [Docket No. 53] is **GRANTED IN PART** and **DENIED IN PART**;

3. Lawton wishes to terminate his representation by counsel in this matter and proceed pro se.  Given the procedural posture of this case, the Court finds that no prejudice to Lawton will result if Lawton proceeds pro se and the Motion to Withdraw [Docket No. 72] is **GRANTED**;

4. Lawton's Motion to Stay/Set Aside Interim Order [Docket No. 76] is **DENIED**;

5. Lawton shall pay disgorgement of $1,758,788.00 plus prejudgment interest calculated from February 2009 to the date of this Order using the Internal Revenue Service delinquent tax rate for unpaid taxes, and Crossroad shall pay disgorgement of $2,075,670.00 plus prejudgment interest calculated from February 2009 to the date of this Order using the Internal Revenue Service delinquent tax rate for unpaid taxes, such payment shall be made to the Clerk of this Court;

6. Lawton shall pay a civil penalty in the amount of $100,000.00 and Crossroad shall pay a civil penalty in the amount of $500,000.00, such payment shall be made to the Clerk of this Court; and

7. The Court's previous Order of Permanent Injunction [Docket No. 34] is hereby

incorporated into this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 7, 2011.