## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Securities and Exchange Commission,

                Plaintiff,

     v.

John W. Lawton, Paramount Partners, LP,
and Crossroad Capital Management, LLC,

                Defendants,

     and

Candace Banbury, Terry Banbury, Carole
Christianson, Mark Christianson, John L.
Lawton, Jr., LouAnn C. Lawton, Robert D.
Lawton, William G. Lawton, and Susan Stein,

                Intervenors.[1]

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-368 ADM/AJB

---

Lonnie F. Bryan, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of the
Securities and Exchange Commission.

Michael L. Puklich, Esq., Neaton & Puklich, PLLP, Chanhassen, MN, on behalf of 35 investors.

John W. Lawton, pro se.

LouAnn C. Lawton, Esq., Cable, WI, on behalf of Intervenors.

---

## I.  INTRODUCTION

On May 22, 2013, the undersigned United States District Judge heard oral argument on

Plaintiff Securities and Exchange Commission's (SEC) Motion for Disbursement of Registry

---

[1]  As discussed below, the Court denies the Intervenors' request to intervene, finding
their request both procedurally and substantively unfounded.  References to this group of persons
as the "Intervenors" herein is for ease of reference only.

[Docket No. 117].  A group of victim investors join in support of the SEC's Motion for

Disbursement.  See Mem. Supp. Disbursement [Docket No. 126].  After the hearing, the nine

above-named Intervenors (the "Intervenors") moved to intervene, requesting the Court order an

independent accounting and grant them a share of the Seized Assets.  For the reasons stated

herein, the SEC's motion for disbursement is granted, and the Intervenors' request to intervene is

denied.

## II.  BACKGROUND

The facts of this case have been discussed in the Court's prior orders.  See Order, Feb. 7,

2011 [Docket No. 79].  In summary, Defendant John W. Lawton ("Lawton") began managing a

hedge fund through Crossroad Capital Management, LLC, an investment advisory firm that later

became known as Paramount Partners, LP.  Compl. [Docket No. 1] ¶¶ 1, 14-15.  Both companies

were later named as defendants in this civil action.  Several dozen investors invested money

through Defendants, and ultimately lost the majority of their invested funds.  See generally id.

In February 2009, the SEC initiated this civil action against Defendants, alleging

securities violations pertaining to conduct that occurred between 2001 and 2009.  Thereafter, a

Temporary Restraining Order [Docket No. 13] and later a preliminary injunction [Docket No.

21] were issued which froze Defendants' assets, including funds in the amount of about $1.5

million (the "Seized Assets").  The Court ultimately issued a permanent injunction, with

Lawton's consent, which prohibited Defendants from future violations of federal securities laws.

The injunction also continued the hold on the Seized Assets.  Order, July 13, 2009 [Docket No.

34].

In October 2009, the United States Attorney's Office initiated a parallel criminal action

against Lawton, bringing charges in connection with his scheme to defraud investors [Crim.

Docket No. 1].[2]  Unlike the civil action, the criminal case pertained only to Lawton's conduct

from 2006 to 2009.  Lawton pled guilty to the charges.  See Tr. Change of Plea Hr'g [Crim.

Docket No. 18].

       Prior to Lawton's sentencing, nine investors, the Intervenors in this case, withdrew their

victim impact statements.  By doing so, the Intervenors withdrew their intent to be considered

Lawton's victims in an effort to reduce Lawton's sentence under the United States Sentencing

Guidelines (the "Guidelines").  See Def.'s Position Sent. Factors [Crim. Docket No. 42] at 9.

The Guidelines dictate a two level offense increase for a crime of fraud or deceit involving 10 or

more victims and a four point increase for an offense involving 50 or more victims.  U.S. Sent.

Guidelines Manual § 2B1.1.  In this case, the Defrauded Investors and the Intervenors originally

combined to form a group of 57 victims.  After the nine Intervenors withdrew as victims, Judge

Magnuson held the additional two point enhancement for 50 or more victims was not applicable

to Lawton's sentence.  See Sentencing Hr'g Tr. [Crim. Docket No. 63] at 3; Def.'s Position Sent.

Factors at 7-9.

       At the sentencing hearing on October 6, 2010, it appears at least four of the Intervenors

made mitigating sentencing statements to the sentencing judge.  See Sentencing Hr'g Tr. at 14-

22.  In each of their statements, these Intervenors affirmatively denied being victimized by

Lawton, and further stated that Lawton had engaged in no wrongdoing whatsoever.  See id.

Judge Magnuson sentenced Lawton to 70 months' imprisonment, and calculated restitution in

---

     [2]  United States v. Lawton, Crim. No. 09-319.  Citations to this action will use the format
"Crim. Docket No.".

the amount of $8,586,768.18.  However, the judge anticipated that the Seized Assets in this

action would also be distributed to Lawton's victims on a pro rata basis.  He thus reduced the

criminal restitution judgment by the amount of the Seized Assets, resulting in a restitution

amount of $7,091,230.75.  Order, Oct. 19, 2010 [Crim. Docket No. 59].

On February 7, 2011, after the resolution of the criminal case against Lawton, the Court

in this action ordered Defendants to disgorge approximately $3.8 million in ill-gotten gains and

civil penalties.  Order, Feb. 7, 2011.  Defendants appealed the Order, and the Eighth Circuit

Court of Appeals affirmed.  SEC v. Lawton, 449 F. App'x 555 (8th Cir. 2012).

On April 10, 2013, the SEC filed the present motion seeking disbursement of the Seized

Assets from the Clerk of Court's Registry (the "Registry") pursuant to the Court's disgorgement

order.  As discussed below, the SEC requests that the funds be distributed on a pro rata basis

among the 48 investors defrauded by Lawton between 2001 and 2009 (the "Defrauded

Investors")—a group that does not include the Intervenors.  The SEC informed the Defrauded

Investors of this proposed distribution, and none objected.  Loken Decl. [Docket No. 119] ¶¶ 3-6.

Shortly after the SEC filed this motion, Lawton filed a pro se "Motion for Summary Judgment"

[Docket No. 124] in which he did not seek summary judgment but instead argued the Intervenors

should also be entitled to pro rata shares of the Seized Assets.

At the hearing on these motions, LouAnn Lawton appeared on behalf of both Lawton and

the Intervenors.  The Court noted a potential conflict of interest in representing both Lawton and

persons seeking recovery from Defendants' frozen assets.  As a result, LouAnn Lawton was

given until June 4, 2013, to resolve the potential conflict, make a formal appearance, and file a

memorandum regarding disbursement.  On June 3, 2013, Lawton withdrew his Motion for

Summary Judgment [Docket No. 129].  On June 12, 2013, LouAnn Lawton filed a formal

appearance on behalf of the Intervenors.  No longer representing Lawton, she also filed a

"Complaint in Intervention," along with a supporting memorandum [Docket Nos. 131, 133].

## III.  DISCUSSION

### A.  Disgorgement and Disbursement

District courts have broad equitable powers in remedying violations of the Securities

Exchange Act.  See SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991) (citations omitted).  One

available remedy is disgorgement, a form of relief intended to deprive the violator of his ill-

gotten gains.  See SEC v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997) (citation omitted);

SEC v. Ridenour, 913 F.2d 515, 517 (8th Cir. 1990) (citation omitted).  Disgorgement primarily

seeks to deter other would-be securities laws violators.  Fischbach, 133 F.3d at 175.  And,

"[a]lthough disgorged funds may often go to compensate securities fraud victims for their losses,

such compensation is a distinctly secondary goal."  Id. at 175-76 (citing SEC v. Commonwealth

Chem. Sec., Inc., 574 F.2d 90, 102 (2d Cir. 1978)).  After a court orders disgorgement, "it

remains within the court's discretion to determine how and to whom the money will be

distributed, and the district court's distribution plan will not be disturbed on appeal unless that

discretion has been abused."  Id. at 175 (citations omitted).

### B.  The Intervenors' Claim to Seized Assets

The Intervenors argue the SEC's proposed distribution wrongfully deprives them of their

rights to a share of the Seized Assets.  The Seized Assets, the Intervenors argue, are funds

invested with Defendants by both the Defrauded Investors and the Intervenors.  Returning this

money to the Defrauded Investors alone deprives the Intervenors of due process and their rights

to a share of the invested funds.  Such a disbursement would "arbitrarily punish" the Intervenors

for taking the position that they were not victims.  See Intervenors' Mem. [Docket No. 133] at 3.

The Intervenors also argue the SEC failed to provide them with adequate notice of its proposed

distribution, as they received notice of the proposal only when served with the SEC's motion for

disbursement.  As a result, the Intervenors request that the Court order an independent

accounting of the Seized Assets and divide the funds among both the Defrauded Investors and

the Intervenors.

         The SEC responds that its proposed disbursement is fair.  First, the SEC argues the

Intervenors' "Complaint in Intervention" is untimely and lacks merit.[3]  Second, the SEC argues

the Intervenors affirmatively chose to revoke their status as Lawton's victims, and thus should

not share in funds intended to compensate those victimized by Lawton's fraud.  In support of this

second argument, the SEC notes Judge Magnuson, in reliance on the Intervenors' actions, did

not count them as victims in the criminal case and thus did not include them as part of his

restitution order.  The SEC also argues the Intervenors received sufficient due process in that

they received notice and were able to respond to the present motion for disbursement.

         In the context of federal securities law violations, disgorgement, unlike restitution, is not

a remedy intended to make investors whole.  Nor is the distribution of disgorged funds to victims

required by law.  See SEC v. Tome, 833 F.2d 1086, 1096 (2d Cir. 1987).  In some instances,

courts have declined to return any ill-gotten gains to victims when practicality or fairness have

---

         [3] The SEC is correct that the Intervenors' request to intervene raises serious procedural
concerns and is also untimely.  Any one of the raised issues could by itself be fatal to the
Intervenors' request.  However, because this motion arises in an equitable context, and because
the Court ultimately concludes the Intervenors' request lacks merit, the Court will consider the
Intervenors' argument on the fairness of the proposed disbursement of disgorged funds.

warranted it.  See, e.g., SEC v. Lorin, 869 F. Supp. 1117, 1129 (S.D.N.Y. 1994).  In Lorin, the

court held "disgorged proceeds can very well end up in the United States Treasury, for example,

(1) where numerous victims suffered relatively small amounts thereby making distribution of the

disgorged proceeds to them impractical . . . ; (2) where the victims cannot be identified . . . ; and

(3) where there are no victims entitled to damages . . . ." Id. (citations omitted).  After ordering

disgorgement, the court should only return funds to the victims of the violation where such a

distribution serves equity.  See Fischbach, 133 F.3d at 176 (affirming denial of disgorged funds

to a potential victim of securities fraud because it would result in undeserved windfall).

As the decisions cited above indicate, the Intervenors misunderstand their position.

Defendants were specifically ordered to disgorge the funds they awarded themselves as part of

Lawton's investment scheme so as to prevent unjust enrichment.  Order at 6-9, Feb. 7, 2011.

Even assuming the Intervenors have timely and properly raised their proposed intervention, they

do not have any right to—or property interest in—the Seized Assets.  As a result, it is not clear

how the Intervenors could be deprived of due process or any other Constitutional right by virtue

of the disbursement of the disgorged funds.  Similarly, the Intervenors had no recognized right to

make such objections, though they have now had the opportunity to make equitable arguments.

Viewed on the merits, the Intervenors' request must be denied because the Intervenors

made a concerted effort to convince Judge Magnuson that they were not victims.  The

Intervenors went so far as to state on the record that Lawton had committed no wrongdoing, and

that the investors had lost their investments due only to the economic recession.  Sentencing

Hr'g Tr. at 14-22.  The sentencing court and the Government relied on these representations, and

Lawton obtained a lower offense level calculation as a result.  But now that Lawton's sentence is

final, the Intervenors claim to be Lawton's victims and seek a share of funds in which they had previously disclaimed any interest.[4]

In the parlance of equity, that is unfair. Granting the Intervenors' request would reward them for saying whatever served their interests at the moment, regardless of the truth, and it would deprive the Defrauded Investors, undisputedly Lawton's victims, of a portion of their recovery. Significantly, Lawton first argued for the Intervenors' interests in his Motion for Summary Judgment, and LouAnn Lawton then argued for Lawton's interests at the hearing in this matter. Clearly, Lawton's and the Intervenors' interests were openly aligned as little as a month ago. Thus, disbursing funds to the Intervenors might actually contravene the purposes behind disgorgement. The Intervenors' request will thus be denied.

## C. Disbursement to Defrauded Investors

The SEC proposes distributing the Seized Assets to the Defrauded Investors on a pro rata basis according to each victim's investment. The specific distributions to the 48 Defrauded Investors are outlined in the SEC's exhibit. See Loken Decl. Ex. A. This distribution includes Tom Weekly, an investor whose losses span from 2002 to 2009. Id. The SEC argues that this proposed distribution most fairly compensates victims, including Weekly, who all lost much more money than they will receive from the Seized Assets. The SEC notified each Defrauded Investor of the proposed plan, and none objected. Loken Decl. ¶¶ 3-6.

The Seized Assets will be disbursed as proposed by the SEC. The Court previously

---

[4] At Lawton's sentencing hearing, LouAnn Lawton, an Intervenor, counsel for the Intervenors, and Lawton's stepmother, said, "We know the truth. We know no money was stolen. There is no money to disgorge." Sentencing Hr'g Tr. at 21. Three other Intervenors made comparable statements.

noted some ambiguity in the Complaint regarding when Lawton's securities law violations began, with the Complaint potentially alleging violations dating as far back as 2001. However, because Lawton himself admitted to engaging in securities law violations since at least 2006, the Court limited its disgorgement order to transfers made between 2006 and 2009, when Lawton's scheme collapsed. Order at 7, Feb. 7, 2011. The SEC argues that Weekly should receive a share of the Seized Assets that account for the investments he made both before 2006 and after 2006, as to do otherwise would unfairly deny him recovery for his losses. The Court agrees. The primary goal of the disgorgement was to deprive Defendants of their ill-gotten gains. With that goal having been accomplished, the SEC's proposed plan now serves the equitable, secondary goal of compensating Defendants' victims, a group to which Weekly undisputedly belongs. That Weekly suffered losses prior to 2006 does not change this equation.

As a final note, the SEC observes that the Seized Assets have earned interest while held in the Registry. Because Judge Magnuson reduced the criminal restitution award by the amount of the Seized Assets, the SEC observes that the restitution award should be further reduced by the amount of interest earned by the Seized Assets. The SEC and/or the United States Attorney's Office is directed to draft a proposed amended restitution order to this effect and submit it to Judge Magnuson.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Lawton's Motion for Summary Judgment [Docket No. 124] is **WITHDRAWN**.

2.      The Intervenors' Complaint in Intervention [Docket No. 131] is **DENIED**.

3.      The SEC's Motion for Disbursement [Docket No. 117] is **GRANTED**.

4.      The Clerk of Courts shall disburse the Seized Assets held in the Registry in this case in cooperation with the SEC, to effectuate the distribution plan outlined by the SEC in Exhibit A to the Loken Declaration [Docket No. 119].

5.      The SEC or United States Attorney's Office shall seek an amended restitution order from Judge Magnuson as discussed in this Order.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 28, 2013.